THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Case No. 4-23-cv-172-MW-MJF

CHRISTOPHER SADOWSKI,

    Plaintiff,

v.

RED HILLS JOURNALISM FOUNDATION
INC. d/b/a TALLAHASSEE REPORTS

    Defendant.
_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant RED HILLS JOURNALISM FOUNDATION INC. d/b/a TALLAHASSEE REPORTS ("Red Hills"), through their counsel and pursuant to Fed. R. Civ. P. 56, respectfully moves for final summary judgment and states the following in support of Defendant's Motion for Summary Judgment.

**I.    STATEMENT OF UNDISPUTED MATERIAL FACTS**

This case concerns the use of a picture (Photograph) in a news story published by Red Hills on their website, TallahasseeReports.com. Red Hills is a non-profit news organization which covers issues related to Tallahassee, Florida, and Leon County.

On October 18, 2021, the New York Post published a news article on NewYorkPost.com titled, "Biden secretly flying underage migrants into NY in dead of night." While primarily focused on migrants relocated to the New York

area, the news article noted, in paragraph 15, that migrants were being relocated to the Tallahassee area. The article included 15 pictures.

Also, on October 18, 2021, the New York Post published an opinion article related to the original New York Post news article.

On October 19, 2021, Red Hills published a news story on TallahasseeReports.com titled, "New York Post: Mexico-U.S. Border Migrants Resettled in Big Bend Area."

The article highlighted the reference to Tallahassee in the original New York Post story in the Tallahassee Reports title and quoted content from the New York Post in the story.

The Red Hills story also provided information not included in the New York Post story related to the relocation of the migrants. This information included details about the organization that helped resettle the migrants in the Tallahassee area.

In addition, the Red Hills article cited the New York Post, provided a link to the opinion article, and used a picture (Photograph) that was published with the original New York Post news story.

Plaintiff – who has a copyright to the Photograph used by Red Hills - is claiming copyright infringement.

The facts alleged in the complaint and not disputed by Defendant.

## II.     STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when the pleadings and supporting materials show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. See id. ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). The court's focus in reviewing summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252; *Bishop v. Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004).

  The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Celotex v. Catrett, 477 U.S. 317, 324 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248; *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir.2001). In assessing whether the movant has met its burden, the court should view the evidence in the light most favorable to the party opposing the motion and should resolve all reasonable doubts about the facts in favor of the non-moving party. *Denney*, 247 F.3d at 1181.

### III. USE OF PHOTOGRAPH BY DEFENDANT IS PROTECTED BY FAIR USE

Summary judgment should be entered in favor of Defendant because the Defendant's use of the Photograph is not a copyright infringement, but rather is protected and fair use. The fair use doctrine is codified at 17 U.S.C. § 107. The provision states:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, <u>comment, news reporting</u>, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.   17 U.S.C. § 107 (emphasis added).

The statute provides non-exclusive list of four factors that are to be considered when evaluating whether the use of a copyrighted work is "fair." These factors are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

The Court must "balance these factors in light of the objectives of copyright law, rather than view them as definitive or determinative tests." *Field*, 412 F. Supp. 2d at 1117-18 (quoting Kelly v. Arriba-Soft, 336 F.3d. 811, 818 (9th Cir. 2003)).

4

When, as in this case, the copied work (Photograph) is being used for one of the purposes identified in the preamble of 107, there is a "strong presumption" in favor of fair use. *NXIVM Corp. v Ross Inst.*, 364 F. 3d 471, 477 (2d Cir 2004)

**A. Purpose and Character of the Work**

"[T]he fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. "It is well understood that 'copyright does not immunize a work from comment and criticism.'" *Fuentes v. Mega Media Holdings, Inc.*, 2011 U.S. Dist. LEXIS 70996 (S.D. Fla. June 9, 2011).

In this case, the purpose of Red Hills use of the Photograph was transformative by advancing the original story with the addition of new information and new context. The Red Hills article promoted public commentary and discussion of an issue relevant to the Tallahassee area.

Also, the use of the Photograph by Red Hills, which is registered with the Internal Revenue Service as a 501(c)(3) organization with the primary exempt purpose of educating citizens about local government actions, was consistent with the Red Hills non-profit mission. Seen in this light, the use of the Photograph was non-commercial.

Both the purpose and the use of the Photograph by Red Hills weigh in favor of fair use.

## B. Nature of the Copyrighted Work

The second factor in the fair-use analysis "recognizes that there is a hierarchy of copyright protection" depending upon the nature of the copyrighted work. *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257 (11th Cir. 2001). Works that are "closer to the core of intended copyright protection," and thus merit greater protection, include original as opposed to derivative works; creative as opposed to factual works; and unpublished as opposed to published works. See *Campbell v. Acuff-Rose Music*, 510 U.S. 569 (1994). Most often, determining the nature of the copyrighted work involves a court determining whether the copyrighted work at issue is factual or creative, because, in general, fair use is more likely to be found in factual works than creative works. See Campbell, 510 U.S. at 586 (citing *Nimmer* § 13.05[A] at 13-77 ("[A]pplication of the fair use defense [is] greater . . . in the case of factual works than in the case of works of fiction or fantasy.")).

The Photograph used by Red Hills was a non-fictional image of an event taken in real time. Photographs of public events, even those that are historical and newsworthy, are generally deemed more factual than expressive. See *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 538 (S.D.N.Y. 2018) (in case where copyrighted image taken in a spot accessible to the general public, "[t]he fact that [p]laintiff was photographing the events around him as they occurred supports a finding of fair use"); *Barcroft Media, Ltd. v. Coed Media Group, LLC*, 297 F. Supp. 3d 339, 354 (S.D.N.Y. 2017) (celebrity photographs taken in public deemed factual); *North Jersey Media Group Inc. v. Pirro*, 74 F.

6

Supp. 3d 605, 620 (S.D.N.Y. 2015) (photojournalist's picture of 9/11 firefighters raising American flag in real time near the ruins of the World Trade Center "just happened," supporting factual nature of copyrighted work). This is especially true when the original photograph was taken specifically for news-gathering purposes. *Hirsch v. Complex Media, Inc.*, No. 18 Civ. 5488 (CM), 2018 WL 6985227, at *7 (S.D.N.Y. Dec. 10, 2018).

After classifying the work as factual as opposed to creative in nature, the court looks to whether the original work was published or unpublished at the time of the secondary use. When the work at issue was published before the allegedly infringing use, the second fair use factor weighs more heavily in favor of a fair use because the defendant's use did not implicate the plaintiff copyright owner's "right to control the first public appearance of his expression." See *Swatch Grp. Mgmt., Ltd. v. Bloomberg*, 756 F.3d 73, 88 (2d Cir. 2014) (quoting *Harper & Row*, 471 U.S. at 564). See also *Wright*, 953 F.2d at 737.

In this case, the Photograph was published in the New York Post before Red Hills published the transformed version of the image in the Tallahassee Reports article. Thus, this factor weighs in favor of Red Hills, not the Plaintiffs. *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 557 (S.D.N.Y. 2013) (Cote, J.).

### C. Amount/Sustainability of the Portion Used in Relation to the Work as a Whole

"The third factor considers whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable

in relation to the purpose of the copying." *Jama*, 2011 U.S. Dist. LEXIS 43952 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994)). "[U]nder some circumstances, a court may determine that a use is fair even where the protected work is copied in its entirety." *Jama*, 2011 U.S. Dist. LEXIS 43952 (D. Nev. Apr. 22, 2011) (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984)).

In this case, Plaintiff's use of the entire Photograph was reasonable in the context of the news reporting.

### D. Effect of the Use Upon the Potential Market

"The fourth factor is the effect of the allegedly infringing use upon the potential market for or value of the original, copyrighted work." *Jama*, 2011 U.S. Dist. LEXIS 43952 at *11 (citing *Campbell*, 510 U.S. at 590) (citing 17 U.S.C. § 107(4)). "The rationale behind the inclusion of this factor is that '[f]air use . . . is limited to copying by others which does not materially impair the marketability of the work which is copied.'" *Jama*, 2011 U.S. Dist. LEXIS 43952 at *11 (quoting *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 566-67 (1985)). As explained by the Jama court, the weight given to this factor will depend on the relative strength of the showing on other factors, for example: "[a] challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work. . . . If the intended use is for commercial gain, that likelihood [of market harm] may be presumed. But if it is for a noncommercial purpose, the likelihood must be demonstrated."

8

*Jama*, 2011 U.S. Dist. LEXIS 43952 at *11 (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) and *Sony*, 464 U.S. at 451)).

The use of the Photograph by Red Hills through the Tallahassee Reports website would have minimal, if any, impact on the marketability of the Photograph, given the relative market size of Tallahasseereports.com compared to where the Photograph was first posted, NewYorkPost.com.

Easily obtainable information indicates that the NewYorkPost.com audience dwarfs the audience of TallahasseeReports.com. For example, the Tallahassee Reports Facebook account - which redirects readers to Tallahassee Reports content - has approximately 7,100 followers, while the New York Post Facebook account has approximately 5 million followers. In addition, monthly visits to Tallahasseereports.com average 80,000, while the number of visits to the NewYorkPost.com website averages 550 million.

Also, when the secondary use of a copyrighted work is transformative, the possibility of market harm fades away. See *Campbell*, 510 U.S. at 591. See also, *Cariou*, 714 F.3d at 709 ("'the more transformative the secondary use, the less likelihood that the secondary use substitutes for the original'") (quoting *Castle Rock*, 150 F.3d at 145). As discussed above, Red Hills made transformative use of the Photograph by advancing the original New York Post news story with new information relevant to the TallahasseeReports.com audience.

Accordingly, upon balancing all the four fair-use factors, the Court should find that the defense of a fair use appears on the fact of the Complaint and issue an order granting summary judgment in the favor of Red Hills.

Dated: November 6, 2023	Respectfully submitted,

*/s/ Jason Gonzalez*
**Jason Gonzalez**
Florida Bar Number: 146854
**LAWSON, HUCK, GONZALEZ PLLC**
215 South Monroe Street, Suite 320
Tallahassee, FL 32301
jason@lawsonhuckgonzalez.com
marsha@lawsonhuckgonzalez.com

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been e-mailed to Plaintiff's counsel Daniel DeSouza dan@copycatlegal.com and Lauren Hausman lauren@copycatlegal.com this 6th day of November, 2023.

*/s/ Jason Gonzalez*
Jason Gonzalez